UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

| | |
|---|---|
| DILIGENCE MARITIME, LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> AGRIBUSINESS UNITED SAVANNAH ) <br> LOGISTICTS, LLC; ) <br> AGRIBUSINESS MULTI-MODAL ) <br> COMMODITIES, INC.; ) <br> AGRIBUSINESS UNITED NORTH ) <br> AMERICA, INC.; ) <br> AGRIBUSINESS UNITED DMCC; and ) <br> AGRIBUSINESS UNITED AFRIQUE S.A.R.L ) <br> AU. ) <br> Defendants. ) | Case No. _____ <br><br> **PLAINTIFF'S <br> VERIFIED COMPLAINT** |

Plaintiff Diligence Maritime, Ltd. ("**Diligence**" or "**Owners**"), complaining of Defendants Agribusiness United Savannah Logistics, LLC ("**AU Savannah**"), Agribusiness Multi Commodities, Inc. ("**AU Multi**"), Agribusiness United North America, Inc. ("**AU North America**"), Agribusiness United DMCC ("**AU Dubai**"), Agribusiness United Afrique S.A.R.LAU ("**AU Afrique**") allege and say as follows:

### I. Parties and Jurisdictional Allegations

1. This is an action in admiralty, designated as such in accordance with *Fed. R. Civ. P.* 9(h) and for which subject matter jurisdiction is provided by 28 USC § 1333(1). The claims asserted are, *inter alia*, for maritime attachment and garnishment under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, to secure and enforce pre-arbitration remedies as allowed in maritime transaction cases under Section 8 of the Federal

Arbitration Act, 9 U.S.C.A. §1 *et seq.* (the "**FAA**"), for monetary damages available under the General Maritime Law of the United States, and to compel arbitration, pursuant to Section 4 of the FAA.

2. Plaintiff is a corporation organized and existing under the laws of the Commonwealth of the Bahamas.

3. Plaintiff is the Owner of the M/V AEC DILIGENCE, an oceangoing bulk carrier of 31,642 deadweight tons registered in the Bahamas and bearing IMO No. 9249025 (the "**Vessel**").

4. Defendant AU Savannah is a limited liability company organized under the laws of the State of Florida with its principal place of business located at 2 East Bryan Street, Suite 1150, Savannah, Georgia, 31401.

5. Defendant AU Multi is a corporation organized and existing under the laws of the State of Georgia with its principal place of business located at 2 East Bryan Street, Suite 1150, Savannah, Georgia, 31401.

6. Defendant AU North America is a corporation organized and existing under the laws of the State of Georgia with its principal place of business located at 2 East Bryan Street, Suite 1150, Savannah, Georgia, 31401.

7. Upon information and belief, Defendants AU Savannah, AU Multi and AU North America are alter egos of one another, as (1) the stockholders' disregard of the separation of the corporate entities made these Defendants a mere instrumentality for the transaction of their own affairs, (2) there is such unity of interest and ownership that the separate personalities of the corporate entities no longer exist, and (3) to adhere to the doctrine of separate corporate entities would promote injustice or protect fraud.

8. This Court has personal jurisdiction over Defendants AU Savannah, AU Multi and AU North America and venue is proper.

9. Defendant AU Dubai is a corporation organized and existing under the laws of the United Arab Emirates or other foreign country. Defendant AU Dubai cannot be found in this district but, upon information and belief, has property in the district subject to maritime attachment and garnishment under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

10. Defendant AU Afrique is a corporation organized and existing under the laws of the Kingdom of Morocco or other foreign country. Defendant AU Afrique cannot be found in this district but, upon information and belief, has property in the district subject to maritime attachment and garnishment under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

## II.   Factual Allegations

11. On or about June 25, 2015, Plaintiff entered into a voyage charter party with Defendant AU Savannah, in which AU Savannah agreed to charter the Vessel for a voyage from the Mississippi River to Portugal and then on to Casablanca, Morocco. The charter party is a standard form Baltic and International Maritime Council ("**BIMCO**") Uniform General Charter with a recapitulation by email between the parties and/or their agents of certain negotiated terms (the "**Recap**"). Together, the BIMCO Uniform General Charter and the Recap constitute the complete "**Charter Party**".

12. The Charter Party is a maritime transaction for purposes of Section 1 of the Federal Arbitration Act, 9 U.S.C.A. § 1, *et seq*. A true and accurate copy of the Charter Party is attached hereto as **Exhibit "A"**.

13. The Charter Party Recap provides that the performance of Defendant AU Savannah's obligations thereunder is "**Fully guaranteed by Agribusiness United DMCC, Dubai UAE [AU Dubai].**" (Emphasis in original).

14. The Charter Party at clause 19(a) requires any disputes arising thereunder to be resolved according to English law by arbitration in London.

15. The Charter Party at clause 5(c) provides the "Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores."

16. The Charter Party at clause 7 holds Charterers liable for the payment of demurrage.

17. The Recap also provides, in relevant part, as follows:

Clause 24
Out Turn Weight and Shortage Claims

If the vessel discharges are more than one discharge port then the vessel not to responsible for the split of cargo out turn for each individual port but only for the overall out turned quantity. It is further agreed that in case of the vessel discharging in North African ports including but not limited to Morocco, Algeria, Tunisia and Egypt then **the Owners shall not be responsible for short landing claims whatsoever. In the event that the Owners this clause not withstanding should be required to provide a bond or other security in order to prevent delay or arrest of the vessel or to secure the release of the vessel (if arrested) the Charterers are to indemnify the Owners for all costs and expenses incurred in providing such bond or other security as well as provide commensurate counter security and laytime shall continue to count through any delay whatsoever**.

(Hereinafter, the "**Short-Landing Indemnity Clause**") (Emphasis added).

18. Pursuant to the terms of the Charter Party, the Vessel completed loading cargoes of corn gluten feed and soybean products at Darrow, Louisiana on or about July 5, 2015, shipped by Defendant AU Multi.

19. The Vessel discharged certain of the cargoes at Ponta Delgada, Portugal commencing on July 24, 2015 and then sailed for Casablanca, Morocco.

20. The Vessel commenced discharging all remaining cargoes at Casablanca, Morocco on August 2, 2015.

21. In the course of the cargo discharge at Casablanca, on August 6, 2015, the Stevedore appointed by Defendant AU Savannah caused substantial and material damage to the ship's crane, for which the Defendant AU Savannah is responsible pursuant to clause 5(c) of the Charter Party, and for which Defendant AU Dubai is responsible as the guarantor of AU Savannah's performance.

22. During the course of the cargo discharge at Casablanca, on August 7, 2015, Defendants AU Dubai and AU Afrique claimed to be subrogated to the rights of Vessel charterer Defendant AU Savannah and then wrongfully caused the arrest of the Vessel at Casablanca, purportedly to secure claims in the amount of approximately $170,000 for alleged delays, dispatch and cost savings accrued to Owners in the course of the voyage, which event is hereinafter referred to as the "**First Arrest**". The First Arrest and subsequent refusal to arbitrate the claims in London is a breach of clause 19(a) of the Charter Party, which requires all disputes to be resolved by arbitration in London.

23. The Plaintiff immediately contacted Defendant AU Dubai to remind them of the terms of the terms of the Charter Party, to negotiate the immediate release of the Vessel, and to notify them that AU Dubai would be responsible for all damages arising from the First Arrest and the wrongful refusal to arbitrate the claims in London.

24. The Vessel completed the cargo discharge at 11 p.m. local time on August 7, 2015, and since then been continuously detained and delayed at the demurrage rate of $10,000 per day, chargeable to the Defendant AU Savannah, its alter egos AU Multi and AU North

America, and to the Defendants AU Dubai and AU Afrique who claimed to be subrogated to the rights of AU Savannah and thereby caused the First Arrest, which has not been lifted.

25. On August 11, 2015, Plaintiff wired $200,000 to the trust account of its counsel in the United Kingdom to be immediately available to be placed into escrow as security for the claims asserted by Defendants AU Dubai and AU Afrique to be resolved by arbitration in London.

26. Although by email dated August 10, 2015 Defendants AU Dubai and AU Afrique agreed to the escrow of the Plaintiff's funds in the United Kingdom, they have since wrongfully refused to enter into an escrow agreement and rebuffed all attempts by the Plaintiff to negotiate the release of the Vessel in good faith.

27. On August 11, 2015, Defendants AU Dubai and AU Afrique wrongfully caused the arrested Vessel at Casablanca to be arrested a *second* time, purportedly to secure a claim of approximately $40,000 for an alleged short- landing of cargo, which event is hereinafter referred to as the "**Second Arrest**". The Second Arrest is a breach of the Short-Landing Indemnity Clause of the Recap and clause 19(a) of the Charter Party, which requires all disputes to be resolved by arbitration in London.

28. The Defendants have refused Plaintiff's entreaties to cause the Second Arrest to be lifted and to arbitrate that underlying claim in London, as well. Demurrage on the Vessel continues to accrue against the Defendants at the rate of $10,000 per day since August 7th at 11 p.m. local time.

29. Prior to the First Arrest and Second Arrest, the Plaintiff had entered into an agreement with Lebanon Chemicals Company SAL, of Beirut, Lebanon ("**Lebanon**

Chemicals") for Lebanon Chemicals to enter into a 15.1-day voyage charter party for the Vessel, to commence loading at Casablanca not later than 11:59 p.m. on August 11th.

30. As a result of the First Arrest and Second Arrest, the Plaintiff is informed that Lebanon Chemicals is presently in the market to procure alternative tonnage and in that event may attempt to cancel the voyage charter with the Plaintiff, in which case Plaintiff would suffer a net loss of income that fixture would have yielded in the amount of $203,419 over 15 days.

### For a First Cause of Action Against All Defendants
### (Compelling Arbitration)

31. Plaintiff repeats and reasserts all preceding allegations as if set forth herein verbatim.

32. Clause 19(a) of the Charter Party is a written provision in a maritime transaction to settle by arbitration a controversy thereafter arising out of such transaction, and is valid and enforceable under the Federal Arbitration Act.

33. The Plaintiff is entitled to have the above-described disputes directed to arbitration in accordance with Clause 19(a) of the Charter Party, with this Court retaining jurisdiction to enter its decree upon the awards issued therein, and is further entitled to security for the claims they seek to have arbitrated.

### For a Second Cause of Action Against All Defendants
### (Breach of Charter Party and Wrongful Arrest of Vessel)

34. Plaintiff repeats and reasserts all preceding allegations as if set forth herein verbatim.

35. The Defendants working in concert have caused the First Arrest and Second Arrest of the Vessel and wrongfully refused to arbitrate the claims in London in breach of Clause 19(a) of the Charter Party and the Short-landing Indemnity Clause of the Recap.

36. As a result of the Defendants' breach, the Plaintiff has suffered damages in the amount of demurrage since 11 p.m. on August 7th at the rate of $10,000 per day, together with the net income loss of $203,419 from the potential loss of the Lebanon Chemicals voyage charter, as well as approximately $25,000 in additional expenses incurred for anchorage fees, pilotage for shifting the Vessel and launch expenses while the Vessel has been wrongfully detained under the First Arrest and Second Arrest caused by the Defendants as part of Defendants' refusal to arbitrate their alleged claims in London.

### For a Third Cause of Action Against AU Savannah and AU Dubai
### (Breach of Charter Party Stevedore Damage)

37. Plaintiff repeats and reasserts all preceding allegations as if set forth herein verbatim.

38. The Defendants appointed stevedores to discharge the cargo at Casablanca, and the stevedores caused damage to the ship's crane in the amount of approximately $40,000.

39. The Charter Party at clause 5(c) provides the "Charterers [Defendant AU Savannah] shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores."

40. The Charter Party Recap provides that Defendant AU Dubai has "fully guaranteed" the performance of AU Savannah's obligations under the Charter Party.

41. As a result of this breach by AU Savannah and AU Dubai, Plaintiff has suffered damages in the amount of $40,000.

### For a Fourth Cause of Action Against AU Savannah and AU Dubai
### (Breach of Charter Party -- Countersecurity)

42. Plaintiff repeats and reasserts all preceding allegations as if set forth herein verbatim.

43. Defendant AU Savannah, as Charterer, and Defendant AU Dubai, as guarantor, are obligated by the terms of the Short-Landing Indemnity Clause to post counter-security for the alleged cargo shortage claim that is the purported basis of the Second Arrest.

44. Defendants AU Savannah and AU Dubai have wrongfully refused to post counter-security and are thereby in breach of the Charter Party, and Plaintiff has suffered damages as a result.

### For a Fifth Cause of Action Against AU Dubai and AU Afrique
### (Maritime Attachment)

45. Defendants AU Dubai and AU Afrique cannot be found in this District.

46. Upon information and belief, Defendants AU Dubai and AU Afrique have property in the district, including, without limitation, tangible or intangible assets, accounts, freights, sub-freights, hire payments, monies, charter hire, credits, effects, CHIPS credits, payments for bunkers, goods or services or rents, bills of lading, cargoes, funds on deposit and accounts receivable.

47. Plaintiff is entitled, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and 9 U.S.C.A. § 8, to attachment and garnishment of the assets of Defendants UA Dubai and AU Afrique to secure its claims for demurrage, stevedore damage, breach of charter party, wrongful arrest, and the potential lost net revenue from the Lebanon Chemicals charter party as a result of these Defendants' breaches, pending arbitration of the same.

**WHEREFORE**, Plaintiff Diligence Maritime, Ltd. prays:

1. That process issue against Defendants Agribusiness Untied DMCC and Agribusiness United Afrique S.A.R.LAU and that said Defendants be cited to appear and answer the allegations of this Complaint;

2. That if the Defendants Agribusiness Untied DMCC and Agribusiness United Afrique S.A.R.LAU cannot be found within this district, then all of their property, tangible or intangible assets, accounts, freights, sub-freights, hire payments, monies, charter hire, credits, effects, CHIPS credits, payments for bunkers, goods or services or rents, bills of lading, cargoes, debts and the like belonging to or claimed by Defendants Agribusiness Untied DMCC and Agribusiness United Afrique S.A.R.LAU, be attached in the sum of THREE HUNDRED SIXTY EIGHT THOUSAND FOUR HUNDRED NINETEEN AND 00/100THS (**$368,419**) DOLLARS, together with interest thereupon, custodial costs and process costs, increasing by TEN THOUSAND AND 00/100THS ($10,000) DOLLARS per day from August 17, 2015 until the date the Vessel is released is from arrest;

3. That Defendants Agribusiness United Savannah Logistics, LLC, Agribusiness Multi Commodities, Inc. and Agribusiness United North America, Inc. be declared as Garnishees of the aforementioned property of the Defendants Agribusiness Untied DMCC and Agribusiness United Afrique S.A.R.LAU in this district;

4. That the Defendants Agribusiness United DMCC and Agribusiness United Afrique S.A.R.LAU's tangible property be sold under the direction of the Court and the proceeds of the sale brought into the Court;

5. That the Court, after issuance, service and execution of the process herein, direct all of the parties hereto to arbitration in accordance with the Charter Party, and retain jurisdiction to enter its decree upon the award, all as provided by 9 U.S.C.A. § 8;

6.	That the Plaintiff be awarded damages from Defendants Agribusiness United Savannah Logistics, LLC, Agribusiness Multi Commodities, Inc. and Agribusiness United North America, Inc. in the amount of THREE HUNDRED SIXTY EIGHT THOUSAND FOUR HUNDRED NINETEEN AND 00/100THS (**$368,419**) DOLLARS, together with interest, costs, and attorneys' fees, increasing by TEN THOUSAND AND 00/100THS ($10,000) DOLLARS per day from August 17, 2015 until the date the Vessel is released is from arrest; and

7.	That Plaintiff may have such other and further relief as it may lawfully be entitled to receive.

WOMBLE CARLYLE SANDRIDGE & RICE LLP

By:	s/ Vonnetta L. Benjamin
	Vonnetta L. Benjamin
	Georgia Bar No. 049890
	271 17th Street, N.W., Suite 2400
	Atlanta, GA 30363-1017
	vbenjamin@wcsr.com
	(404) 879-2479

WOMBLE CARLYLE SANDRIDGE & RICE LLP
Ryan D. Gilsenan (*Pro Hac Vice Application Pending*)
South Carolina Bar No. 74756
5 Exchange Street/P.O. Box 999
Charleston, SC 29402-0999
(843) 722-3400
rgilsenan@wcsr.com
*Attorneys for the Plaintiff*

# UNITED STATES DISTRICT COURT
## SOUTHERMN DISTRICT OF GEORGIA
## SAVANNAH DIVISION
## IN ADMIRALTY

| | | |
|---|---|---|
| DILIGENCE MARITIME, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| vs. | ) | |
| | ) | |
| AGRIBUSINESS UNITED SAVANNAH | ) | **VERIFICATION** |
| LOGISTICTS, LLC; | ) | |
| AGRIBUSINESS MULTI-MODAL | ) | |
| COMMODITIES, INC.; | ) | |
| AGRIBUSINESS UNITED NORTH | ) | |
| AMERICA, INC.; | ) | |
| AGRIBUSINESS UNITED DMCC; and | ) | |
| AGRIBUSINESS UNITED AFRIQUE S.A.R.L | ) | |
| AU. | ) | |
| Defendants. | ) | |

Personally appeared before me Lars-Peter Madsen, upon being duly sworn, deposes and says as follows:

1. I am in charge of Chartering for the Plaintiff Diligence Maritime Ltd.

2. I have read the foregoing Complaint and know the contents thereof and the same is true to the best of my knowledge, except as to the matters therein stated to be on information and belief, and as to those matters, I believe them to be true.

*[The remainder of this page is intentionally left blank].*

3. The sources of my information and the grounds of my belief are my personal knowledge, communications with the Defendants and their agents, as well as the statements and documents furnished to me by the officers, employees and outside counsel of my organization, Plaintiff Diligence Maritime Ltd.

_____
Lars-Peter Madsen
For and on behalf of
Diligence Maritime Ltd.

SWORN TO before me this
18th Day of August 2015

_____
Notary Public for the Commonwealth of the Bahamas
My Commission Expires: 31/12/15

MIKE A. KLONARIS
NOTARY PUBLIC
P. O. BOX N-7776
NASSAU, BAHAMAS

13

WCSR 34905197v1